IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARRIE ANN ROSELA et al.,
   *Plaintiffs*,

v.

AMERICAN POWER BOAT
ASSOCIATION et al.,
   *Defendants*.

Civil Action No. ELH-16-2969

**MEMORANDUM OPINION**

This case arises from unquestionably tragic events that occurred on June 28, 2015, during the "Thunder on the Narrows" powerboat race on the waters of the Kent Narrows in Maryland. During the race, the driver of a hydroplane lost control, veered off the race course, and crashed at high speed into other boats located in the spectator area, injuring many attendees and killing seven-year-old Julianne Addison Rosela. ECF 37 (Third Amended Complaint) at 6; *id.* ¶ 34. Plaintiffs,[1] the surviving family of the decedent and the other injured spectators, filed suit against numerous defendants, including the American Power Boat Association ("APBA"); the Kent Narrows Racing Association ("KNRA"); the owners and the operator of the power boat; and

---

[1] The plaintiffs are Carrie Ann Rosela, individually and as surviving mother and personal representative of the estate of Julianne Addison Rosela, deceased minor; Antonio Gapuz Rosela, Jr., as surviving father of Julianne Addison Rosela; Michele L. Thomas; Gerald R. Maisel; Bertha Maisel; Allison Oyler; Nicholas Romanchick; Sara Ashley Walder; Joseph F. Walder, Jr.; Raymond Louis Stokes, III; Julia Barton Stokes; Ryan Michael Pribell; Robbie T. Root; Jennifer Browing; Mitchell Thomas; R.J.T., a Minor, by his father and next friend, Mitchell Thomas; Michael Boyd; and Richard P. Sweet, 3rd.

Everest National Insurance Company and Specialty Insurance Group, Inc. (collectively, "SIG"),[2] the insurance companies that insured the race. *Id.* ¶¶ 19-31.[3]

Suit was initially filed in August 2016. ECF 1 (Complaint). Since then, plaintiffs have filed three amended complaints, the most recent of which was filed in March 2017. *See* ECF 27 (Amended Complaint); ECF 29 (Second Amended Complaint); ECF 37 (Third Amended Complaint). Plaintiffs assert 41 counts, generally alleging negligence and related claims, including a survival and wrongful death action. ECF 37, ¶¶ 143-517. As to the two defendants that are Maryland corporations, jurisdiction is founded on admiralty, under 28 U.S.C. § 1333. As to all other defendants, jurisdiction is based on diversity, under 28 U.S.C. § 1332.[4]

SIG has twice moved to dismiss the claims against the insurance companies. ECF 53; ECF 89. SIG first moved to dismiss under Fed. R. Civ. P. 12(b)(6) in April 2017, arguing that it owed no legal duty to plaintiffs. ECF 53 ("Motion 1"). Plaintiffs oppose Motion 1. ECF 71;

---

[2] Everest National Insurance Company and Specialty Insurance Group, Inc. are subsidiaries of the same parent company, and are alleged to be associated for purposes of this suit. ECF 37, ¶¶ 30-31.

[3] The defendants are the American Power Boat Association; American Power Boat Association Region IV, Inc.; Kent Narrows Racing Association, Inc.; Alexander Findlow; Jared Walls; Dan Walls; John Doe; Philip Justus Mitchell; Specialty Insurance Group, Inc.; and Everest National Insurance Co.

[4] Plaintiffs are all citizens of Maryland. ECF 37, ¶¶ 1-18. Region IV and KNRA are Maryland corporations. *Id.* ¶¶ 20-21. Ordinarily, this would defeat diversity jurisdiction, as 28 U.S.C. § 1332 requires complete diversity between plaintiffs and defendants. *See Johnson v. American Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). However, the Fourth Circuit has said that a plaintiff may maintain a single suit alleging jurisdiction under diversity against diverse defendants, and under admiralty against other, non-diverse defendants. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 154 (4th Cir. 1995).

ECF 72; ECF 72-1 (collectively, "Opposition 1").[5] SIG has replied. ECF 78; ECF 79.[6] Several months later, following limited discovery, SIG submitted a "Supplemental Rule 12(b)(6) Motion to Dismiss and/or Rule 56 Motion for Summary Judgment." ECF 89 ("Motion 2"). Motion 2 is supported by 14 exhibits. ECF 89-1 through ECF 89-14. Plaintiffs have moved to strike Motion 2 or, in the alternative, they oppose it. ECF 90 ("Opposition 2"). SIG has replied. ECF 91.

In analyzing the motions, I am mindful that plaintiffs do not seek recovery under the policy of insurance issued by SIG; they do not allege breach of contract. *See* ECF 37. Rather, they allege that SIG was not a mere insurer. *See* ECF 37, ¶¶ 42, 54. According to plaintiffs, SIG, on behalf of APBA and KNRA, assumed the duty to assure, *inter alia*, that the design of the course and other safety standards were met, in order to protect third parties. *Id.* ¶¶ 73, 74. But, plaintiffs assert that SIG failed to abide by minimum safety standards and failed to exercise due care. *See id.* ¶¶ 67, 68. For example, plaintiffs allege that SIG established the buffer between the race course and the spectator area, which was allegedly inadequate, and approved the design of the race course. *Id.* ¶¶ 67-68; 71-73.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny both motions.

---

[5] ECF 71 was submitted by all but one of the plaintiffs. The remaining plaintiff, Antonio Gapuz Rosela, Jr., submitted a separate opposition to Motion 1 (ECF 72), supported by a memorandum of law. *See* ECF 72-1.

[6] ECF 78 is responsive to ECF 71. ECF 79 is directed to ECF 72. But, in ECF 79, SIG merely adopts the content of ECF 78.

### I.     Factual Background[7]

In February 2015, KNRA began organizing the 25th Thunder on the Narrows, a boat race cosponsored by the APBA.  ECF 37, ¶¶ 36-37.  In order to gain the sponsorship and official sanction of the APBA, KNRA needed to procure insurance for the race.  *Id.* ¶ 56.  SIG, APBA's "exclusive agent in providing coverage for APBA and its member organizations" (*id.* ¶ 56) is alleged to have established a consistent business relationship with APBA and to have regularly attended APBA's annual meetings.  *Id.* ¶¶ 54, 56.  According to plaintiffs, SIG was responsible for the approval of APBA regattas, and for ensuring compliance with basic minimum safety standards.  *Id.* ¶ 55.  In this capacity, plaintiffs allege that SIG, either on its own or in collaboration with the APBA, developed a "Regatta Insurance Application."  *Id.* ¶ 58.  The entire process of assuring compliance with minimum safety standards, plaintiffs contend, was administered by SIG.  *Id.* ¶ 60.  The application required KNRA to submit a scaled diagram of the race course layout, including the location of the spectator fleet.  *Id.* ¶ 59.  The application, allegedly drafted by SIG, indicated that the spectators should be located at least 250 feet outside the outer course markers.  *Id.* ¶ 43.

KNRA submitted the application and the diagram, but the diagram was not to scale and was labeled with the proviso "Drawing <u>NOT</u> to Scale!"  *Id.* ¶ 65.  In the diagram, the spectator fleet (where spectators could watch the race from their boats) is shown as being "within feet" of the outside markers.  *Id.* ¶ 68.  Plaintiffs allege that SIG had actual knowledge that the course in

---

[7] The factual allegations are derived from the Third Amended Complaint, and are common to both motions.  Based on the procedural posture of the case, I must assume the truth of the well pleaded factual allegations therein.  *See*, *e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

The Court notes that the electronic pagination does not always correspond to the page numbers as they appear on the parties' submissions.  The Court's citations refer to the electronic pagination.

question "could not possibly provide a 250 foot buffer between the outside course buoys and the spectator fleets." *Id.* ¶ 67. A true 250 foot buffer would have placed the spectators on land, rather than watching from their boats. *Id.* ¶ 68. Nevertheless, SIG accepted the application and the diagram, and issued certificates of insurance for the race. *Id.* ¶ 71. Thereafter, the APBA agreed to sanction the race, allegedly on the basis of SIG's approval. *Id.* ¶¶ 72-73.

On the day of the race, plaintiffs were directed to view the race from an area "just a few feet" beyond the course markers. *Id.* ¶ 123. They observed from recreational boats, located in the designated spectator fleet area, as determined by SIG, APBA, and KNRA. *Id.* ¶ 125. And, on June 28, 2015, at approximately 4:45 P.M., one of the racing boats veered off the course and crashed into a string of the spectators' boats. *Id.* ¶¶ 134-35. Seven-year-old Julianne Addison Rosela drowned (*id.* ¶ 141), and other plaintiffs suffered substantial physical injuries. *Id.* ¶ 139. This suit followed.

Additional facts are included in the Discussion.

## II.    Choice of Law[8]

As noted, this Court's jurisdiction as to the claims against SIG is founded on diversity. *See* 28 U.S.C. § 1332. A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Thus, Maryland law applies. And, regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*"). *See, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).

---

[8] The parties seem to assume that Maryland law applies.

In this case, the crash giving rise to the claims occurred "on the navigable waters of Kent Narrows, located entirely within the geographic boundaries" of Maryland. ECF 37, ¶ 34. Therefore, I shall apply Maryland tort law to the motions.

### III. Motion 1

#### A.

As noted, Motion 1 is a motion to dismiss under Fed. R. Civ. P. 12(b)(6). ECF 53. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to

satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer"

that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

**B.**

In Motion 1, SIG argues that its decision to issue an insurance policy to other defendants to insure the race does not give rise to liability in tort to plaintiffs, because it owed no legal duty to plaintiffs. ECF 53 at 4-5, 10. SIG maintains that its liability is limited to its contractual obligations, under the applicable insurance policy, for covered losses caused by an insured. *Id.* at 4-5.

According to SIG, plaintiffs allege liability under the principle articulated in the Restatement (Second) of Torts § 315, as interpreted by Maryland courts. That rule provides (*id.*):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

The Maryland Court of Appeals has held that "'§ 315, which reflects the common law of this State, outlines the appropriate analytical framework for determining whether an actor has a duty to control a third person.'" *Remsburg v. Montgomery*, 376 Md. 568, 590, 831 A.2d 18, 31 (2003) (quoting *Lamb v. Hopkins,* 303 Md. 236, 245, 492 A.2d 1297, 1302 (1985)).

SIG argues that it never had a duty under this framework, because plaintiffs have not alleged the existence of a special relationship between SIG and any other party. ECF 53 at 14. Plaintiffs rejoin with two arguments: Plaintiffs *did* allege a special relationship between SIG and the organizers of the boat race (ECF 72-1 at 18); and, in any case, plaintiffs' primary theory of

liability is not based on § 315 of the Restatement (Second) of Torts, but rather § 324A. ECF 72-1 at 5-6.

Section 324A of the Restatement (Second) of Torts states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

As noted by plaintiffs, the principles of this section have been recognized as part of Maryland law. ECF 71 at 7-8. *See Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 282, 609 A.2d 297, 300 (1992); *see also E.G. Rock, Inc. v. Danly*, 98 Md. App. 411, 423, 633 A.2d 485, 491 (1993); *Heinrich v. Goodyear Tire & Rubber Co.*, 532 F. Supp. 1348, 1353 (D. Md. 1982).

As the late Judge Miller discussed in *Heinrich*, 532 F. Supp. at 1354, to show liability under § 324A a plaintiff must allege that the defendant undertook a duty, and that the plaintiffs were injured by the defendant's acts or omissions in connection with the undertaking of that duty. "In addition, . . . the plaintiff must then produce evidence fulfilling the criteria set out in subsections (a), (b) or (c)" of § 324A. *Id.*

Plaintiffs assert that, in the context of a motion to dismiss, they have sufficiently alleged SIG's tort liability under this framework. *See* ECF 71 at 15-18. They maintain that SIG's "role was not limited to solely an insurance provider." ECF 71 at 6. Plaintiffs allege that SIG affirmatively undertook to play a significant role in the development of the safety arrangements and course design for Thunder on the Narrows. *Id.* at 12-13. In particular, plaintiffs have asserted that "SIG provided the service of safety compliance for the benefit of Defendants APBA

and KNRA" (ECF 37, ¶ 42), and "SIG was completely responsible . . . for the approval and sanctioning of regattas held by an APBA member club." *Id.* ¶ 55. In furtherance of this contention, plaintiffs allege that "APBA relied wholly, or in part, upon the Regatta Insurance Application and approval process undertaken, paid for, and administered by [] SIG as a method for assuring compliance with the basic minimum standards for safety." *Id.* ¶ 60.

As for SIG's alleged breach of this assumed duty, plaintiffs contend that, although SIG required KNRA to submit a race plan that allowed for a minimum of 250 feet between the race course and the spectator fleet (ECF 37, ¶¶ 43, 44), SIG knowingly approved a race plan that could not possibly have allowed for the required 250 foot buffer. *Id.* ¶¶ 67, 68. Plaintiffs contend that "[i]t is reasonable to infer that Defendant SIG provided this service for the benefit of race spectator Plaintiffs." ECF 71 at 14. Given that SIG undertook to ensure the safety of the event, plaintiffs allege that SIG knew or should have known it approved a plan that was inadequate by its own specified criteria.

Plaintiffs have also alleged facts to fulfill the criteria in § 324A(a), (b), and (c). They assert that SIG failed to use reasonable care in reviewing the Regatta Insurance Application. *Id.* ¶¶ 64, 67. In addition, plaintiffs have alleged that SIG undertook to perform a duty that KNRA and APBA owed to plaintiffs and other attendees. *Id.* ¶¶ 42, 55. And, plaintiffs have alleged that APBA relied on SIG to provide these safety services. *Id.* ¶ 60.

Of course, these allegations may prove to be false. SIG protests that its actions were taken solely in the context of deciding whether to provide insurance for the event. ECF 78 at 3. Perhaps so. But, at this stage in the litigation, plaintiffs need only allege facts that state a claim that is plausible on its face. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). This

remains the case "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

As alleged, plaintiffs' claim is plausible. As a result, I need not reach the question of whether SIG had a special relationship with another entity under § 315 of the Restatement (Second) of Torts, and I shall deny Motion 1.

### IV. Motion 2

#### A.

SIG's Motion 2 is predicated on Rule 12(b)(6) or, in the alternative, Rule 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). As indicated, a court is ordinarily "not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. Cty of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). Where, as here, the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." C. Wright & A. Miller, 5C *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights . . . ." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action[]" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *Kolon Industries*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 Fed. App'x. 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"

*Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Plaintiffs contend that conversion to summary judgment is inappropriate because they have not had an adequate opportunity for discovery. ECF 90 at 2. In support of their contention, plaintiffs have submitted the Declaration of Roy L. Mason, Esq., in accordance with Rule 56(d). *See* ECF 90-1. Mr. Mason, an attorney for several plaintiffs, avers that "SIG's liability in this case will hinge in large part on evidence concerning their representations to the boat race organizers (APBA/KNRA), SIG's conduct in contributing to the creation of APBA/KNRA's race safety rules and regulations, and the manner and extent of APBA/KNRA's reliance on SIG's conduct and representations." *Id.* ¶ 4. Moreover, Mason avers that plaintiffs have identified specific sources of information which they have not yet had the opportunity to investigate. *Id.* ¶ 5. He states (*id.*):

> First, neither Everest National Insurance Co., Specialty Insurance Group, Inc., nor any of their corporate designees or representatives have been deposed. Second, discovery has revealed that insurance representatives attended annual APBA meetings. Plaintiffs have yet to discover the full scope of what was discussed at those meetings, what representations SIG made during those meetings, or what contributions SIG made to APBA's race safety rules at those meetings. Third, of the more than a dozen anticipated APBA/KNRA representatives/witnesses, only four have been deposed.

I agree that plaintiffs are entitled to conduct discovery relevant to their claims. A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material

fact.'" *Adams Housing, LLC*, 2016 WL 6958439, at *2. As the Fourth Circuit stated in *McCray*, 741 F.3d at 483, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

Accordingly, I decline to convert Motion 2 into one for summary judgment. Instead, I shall construe it as a motion to dismiss under Rule 12(b)(6).[9]

**B.**

As noted, SIG has attached 14 exhibits to Motion 2. Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

---

[9] As plaintiffs acknowledge, "SIG is not barred from filing more than one motion to dismiss over the course of this litigation." ECF 90 at 5. And, other judges of this Court have interpreted Rule 12 permissively to allow for the filing of multiple motions to dismiss. *See Aviles-Cervantes v. Outside Unlimited, Inc.*, RDB-16-1214, 2017 WL 3916985, at *5 (D. Md. Sept. 7, 2017); *see also F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 383 (D. Md. 2009).

Plaintiffs style Opposition 2 as a "Motion To Strike Or, In The Alternative, Opposition" to Motion 2. ECF 90 at 1. They argue that, rather than being an independent motion, Motion 2 is, in substance, a surreply relating to Motion 1. *Id.* at 4. Plaintiffs contend that, as a surreply, Motion 2 is untimely and procedurally defective, and should therefore be struck. *Id.* at 6. Because I shall deny Motion 2 on its merits, I need not consider this argument.

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *petition for cert. filed*, No. 17-492 (Oct. 3, 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Most of the exhibits SIG has attached to Motion 2 are not integral to the Third Amended Complaint. However, SIG has also attached the Regatta Insurance Application (ECF 89-2), which plaintiffs repeatedly refer to in the Third Amended Complaint (*see, e.g.*, ECF 37, ¶ 71), and which may be considered to give rise to several of plaintiffs' claims. Plaintiffs, in their Opposition 2, do not challenge the authenticity of the Regatta Insurance Application. Therefore, I shall consider it.

## C.

SIG points to the Regatta Insurance Application for its contention that it never undertook any duty to provide safety services in connection with the race. ECF 89 at 2. In particular, SIG cites language at the end of the application, which states (ECF 89-2 at 8) (capitals in original):

> NEITHER THE RIGHT TO MAKE AN UNDERWRITING AND/OR LOSS CONTROL INSPECTION NOR THE MAKING THEREOF NOR ANY REPORT THEREOF SHALL CONSTITUTE AN UNDERTAKING ON BEHALF OF OR FOR THE BENEFIT OF ANY INSURED OR OTHERS TO FORECAST ANY ACCIDENT OR ITS SEVERITY, OR DETERMINE OR WARRANT THAT SUCH PROPERTY OR OPERATIONS ARE SAFE OR HEALTHFUL, OR ARE IN COMPLIANCE WITH ANY ENGINEERING STANDARDS, RULES OR REGULATIONS.

The application was signed by Christopher R. Oliver, Jr., KNRA's Vice-President, indicating his assent, and that of KNRA, to the terms. ECF 89 at 9.

Therefore, SIG asserts that "there is simply no evidence that [SIG] undertook to act either for the benefit of the race organizers or any spectators." *Id.* at 16. This may be so. However, because I construe Motion 2 as a motion to dismiss, and not as a motion for summary judgment, the question at hand is not whether any evidence supports plaintiffs' allegations. Instead, I must determine if plaintiffs' complaint states a claim that is plausible on its face. *See Hall v. DIRECTV, LLC*, 846 F.3d at 765; *see also Twombly*, 550 U.S. at 570.

The language in the Regatta Insurance Application may suggest that SIG never undertook to provide safety services to any other party. But, plaintiffs have alleged that SIG *did* provide such services. And, the contract provision is not necessarily dispositive; plaintiffs have filed a Rule 56(d) affidavit contending that they expect discovery to reveal conduct and further representations by SIG to KNRA and APBA that are relevant to the claim. ECF 90-1, ¶ 5. SIG may have declared that it would not undertake to provide services for the benefit of APBA, but later it may have done so. Moreover, SIG may have made other contrary representations to APBA or KNRA that plaintiffs have not yet discovered.

At this stage, I must accept as true the allegations of the Third Amended Complaint. As discussed in the context of Motion 1, the allegations set forth in the Third Amended Complaint state a claim that is plausible on its face. Accordingly, I need not reach the parties' other arguments. I shall deny Motion 2.

## V.     Conclusion

For the reasons stated above, I shall DENY Motion 1 and Motion 2.  An Order follows, consistent with this Memorandum Opinion.

Date:   November 16, 2017                                         /s/
                                                                  Ellen Lipton Hollander
                                                                  United States District Judge